IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Tony O'Manley Whisenhunt, | ) | Civil Action No.  8:15-cv-00173-RBH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On November 2011, Plaintiff filed an application for DIB, alleging an onset of disability date of April 1, 2009.  [R. 157–62.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 80–103.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on December

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

5, 2013, ALJ Walter C. Herin, Jr. conducted a de novo hearing on Plaintiff's claims. [R. 28–79.]

The ALJ issued a decision on March 27, 2014, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 10–27.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity since April 1, 2009, the alleged onset date. [R. 15, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, status post L5-S1 hemilaminectomy, foraminotomy and discectomy with radiculopathy; remote history of fractured hip; and peripheral vascular disease. [R. 15, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of untreated hypertension, alcohol dependence, and marijuana abuse. [R.16.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 16, Finding 4.] The ALJ considered Listings 1.02, 1.04, and 4.12. [R. 16.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no lifting or carrying over 10-15 pounds occasionally and 10 pounds frequently; no more than occasional stooping, crawling, crouching, kneeling, and climbing of stairs/ramps; no more than frequent balancing; no climbing of ladders, ropes or scaffolds; no standing or walking longer than 45 minutes at

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

one time without the ability to sit; and avoidance of exposure
to unprotected heights and dangerous machinery.

[R. 16, Finding 5.]  Based on this RFC, the ALJ found at Step 4 that Plaintiff was unable to perform any past relevant work.  [R. 21, Finding 6.]  However, based on his age, education, work experience, RFC, and the testimony of a vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 22, Finding 10.]  Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 1, 2009, through the date of the decision.  [R. 23, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Appeals Council declined.  [R.1–5.] Plaintiff filed this action for judicial review on January 13, 2015. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ failed to properly evaluate whether Plaintiff met Listing 1.04A; failed to conduct a proper Step 5 analysis; and failed to properly assess opinion evidence.  [Doc. 12.]  The Commissioner, however, contends that the decision is supported by substantial evidence.  [Doc. 13.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation.

5

*See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

> impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).    The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.    20 C.F.R. § 404.1520.    Through the fourth step, the burden of production and proof is on the claimant.    *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).    The claimant must prove disability on or before the last day of her insured status to receive disability benefits.    *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).    If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.    *Grant*, 699 F.2d at 191.    If at any step of the evaluation the ALJ can find

an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or

9

her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship

and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

13

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

15

of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

16

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Listing 1.04 Analysis**

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms.  *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination").  "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing."  *Beckman v. Apfel*, No. WMN–99–3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) (quoting *Cook*, 783 F.2d at 1172).  While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 404.1527(f)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing, *id*. § 404.1527(e)(2).

The ALJ is obligated to explain his findings and conclusions on all material issues of fact, law, or discretion presented.  5 U.S.C. § 557(c)(3)(A) (2012).  "Strict adherence to this statutorily-imposed obligation is critical to the appellate review process," and courts

have remanded cases where the reasoning for the ALJ's conclusion "is lacking and therefore presents inadequate information to accommodate a thorough review." *See v. Wash. Metro. Area Transit Auth*., 36 F.3d 375, 384 (4th Cir. 1994) (internal citation omitted). While an ALJ need not set forth his findings in a particular format, *see Stephens v. Heckler*, 766 F.2d 284, 287–88 (7th Cir. 1985), a reviewing court cannot determine if findings are supported by substantial evidence unless the ALJ explicitly indicates the weight given to all of the relevant evidence. *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984). "Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record." *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

Listing 1.04 provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

18

> dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.  In evaluating Plaintiff's impairments under Listing 1.04, the ALJ reasoned as follows:

> No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment.  In making this finding, I considered all applicable impairment listings, including 1.02, 1.04, and 4.12.

[*Id*.]

Upon review, the Court is unable to determine whether the ALJ's decision is supported by substantial evidence because the ALJ failed to explain why the evidence identified by Plaintiff as supporting his claim that his impairments met Listing 1.04A was insufficient to support such a finding.  It is the duty of the ALJ to resolve conflicts in the evidence of record.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (1990).  However, without a discussion of the conflicting evidence, it is difficult for a reviewing court to (1) track the ALJ's reasoning and be assured that all record evidence was considered and (2) understand how the ALJ resolved conflicts in the evidence.  *See Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) ("[S]o long as the narrative opinion *is sufficien[tl]y detailed and cogent on the ultimate issues* for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial

19

evidence in the record, then the lack of specific findings on more subordinate issues . . . does not require reversal." (emphasis added)).

Here, the ALJ's Listing 1.04 analysis is remarkable for its abbreviated and inadequate consideration of Plaintiff's spinal impairments evidenced by, at a minimum, the following evidence of record directed to the criteria of Listing 1.04A:

- multi-level degenerative disc disease, with a large left posterolateral extrusion of the L5-S1 disc filling the left L5-S1 neural foramen and likely compressing the left L5 lumbar nerve [R. 253];

- mild to moderate narrowing of the L5-S1 disc space with associated bony sclerosis; mild to moderate degenerative facet disease at the lumbosacral junction; mild degenerative disc disease at the L3-4 level [R. 308];

- medial displacement of the descending S1 and S2 nerve roots [R. 255];

- neural impingement by the large recurring disc at L5-S1 [R. 270];

- exceedingly large extruded recurrent disc on the left at L5-S1 with severe thecal sac and nerve root impingement [R. 272];

- numbness involving the lateral aspect of the ankle and foot [R. 260];

- increased numbness in the lower leg with a history of radiculopathy and limited use of the leg [R. 262];

- residual numbness in an S1 pattern on the left [R. 263, 270];

- plantarflexion weakness on the left [R. 264];

- numbness in the left foot [R. 267, 270];

- numbness in an L5 distribution involving the foot and lateral calf [R. 273];

- light touch is not felt at all on the left foot and leg until 2 inches below the tibial plateau; pinprick is likely very diminished until 4 inches below the tibial plateau [R. 313];

- motor exam abnormal; movements are slow and tremulous [R. 313];

- mild positive straight leg raise on the left at 80 degrees [R. 267];

20

• markedly positive straight leg raises on the left at 70 degrees and above [R. 270, 273].

The ALJ summarily concluded that Plaintiff's impairment does not meet Listing 1.04 with no explanation of the elements or medical evidence considered. As Plaintiff contends, the record contains evidence that his impairment exhibited each of the criteria of Listing 1.04A. A review of the medical evidence appears to indicate numerous instances suggesting compromise of a nerve root or the spinal cord with evidence of nerve root compression accompanied by limitation of motion, motor loss, sensory or reflex loss, and positive straight-leg raising test. Moreover, as Plaintiff contends, the regulation does not require that all of the signs/symptoms be present at the same time. *Radford v. Colvin*, 734 F.3d 288, 293–94 (4th Cir. 2013).

While it is within the purview of the ALJ to weigh the evidence and determine credibility, the ALJ must provide an explanation of how he came to his conclusion; otherwise, proper judicial review is impossible. Here, although the ALJ acknowledged some of the above-referenced evidence in his discussion of the RFC assessment [*see* R. 17–20], the ALJ failed to offer any explanation as to how this evidence informed any portion of his Listing analysis. To the contrary, the ALJ expressly discussed evidence that conflicts with his finding that Plaintiff's impairment fails to meet Listing 1.04A, but failed to explain how the evidence was considered, weighed, or disregarded in his Listing analysis or how the ALJ resolved any conflicts in the evidence. Thus, with respect to the evidence supporting Plaintiff's claim that his impairment meets Listing 1.04A, without a discussion of how the ALJ weighed and resolved the evidence, the Court is unable to find that the ALJ's decision is supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain the Listing analysis is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ failed to conduct a proper Step 5 analysis and failed to properly assess opinion evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 29, 2016
Greenville, South Carolina